T.C. Memo. 1996-40

UNITED STATES TAX COURT

JAMES STEWART AND MARY ANN LANPHERE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2981-94.                    Filed February 5, 1996.

James Stewart Lanphere and Mary Ann Lanphere, pro sese.

Mathew I. Root, for respondent.

MEMORANDUM OPINION

PAJAK, Special Trial Judge:  This case was heard pursuant to
section 7443A(b)(3) of the Code and Rules 180, 181, and 182.
Unless otherwise indicated, all section numbers refer to the
Internal Revenue Code for the taxable year in issue, and all Rule
numbers refer to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $802 in petitioners'
1990 Federal income tax.  The Court must decide whether payments

made by petitioner husband are deductible as alimony payments under section 215.

For clarity and convenience, the findings of fact and opinion have been combined.

Some of the facts in this case have been stipulated and are so found. Petitioners resided in Brocton, New York, at the time they filed their petition.

Petitioner James Stewart Lanphere (James), married Virginia Jean Panek (Virginia) on December 13, 1970. On December 14, 1978, their daughter, Renea Jean Lanphere (Renea), was born. James also had a son from a previous relationship, Grove Jason Lanphere (Grove), who lived with James and Virginia throughout their marriage.

In 1984, Virginia commenced divorce proceedings against James in the Supreme Court, Chautauqua County, New York. On December 11, 1984, the parties appeared and in open court entered into an oral stipulation that provided for the distribution of their marital assets. The stipulation also provided, in pertinent part:

> That the custody of the infant child Renae [sic] Jean Lanphere shall be to * * * [Virginia].
>
>     *    *    *    *    *    *    *
>
> That * * * [James] shall pay to * * * [Virginia], as unallocated family support, the sum of $200 a week, for so long as the car payments are presently outstanding on the wife's 1980 Lebaron automobile. We represent that that should be approximately three months, but no more than six.

Subsequent to the payment of the loan on the Lebaron, the unallocated family support shall decrease in the amount of $140 a week, for so long as Grove * * * shall be present with * * * [Virginia].

* * * * * * *

All future matters of child support, custody, visitation and maintenance shall be referred to the Chautauqua County Family Court, to hear, determine, and enforce.

On April 1, 1985, a final Judgment of Divorce [the Judgment] was issued by the Supreme Court of the State of New York, County of Chautauqua. The Judgment recited that James had withdrawn his Notice of Appearance and permitted the action to proceed to divorce by default. The Judgment also directed that the oral stipulation given in open court on December 11, 1984, be merged in to and made a part of the final Judgment. The relevant language of the final Judgment ordered the following:

ORDERED, ADJUDGED AND DECREED, that * * * [Virginia] shall have custody of the infant child of the marriage, viz., RENAE [sic] * * *

ORDERED, ADJUDGED AND DECREED, that * * * [James] shall pay to * * * [Virginia], as unallocated family support, the sum of $200.00 per week, for so long as the car payments are presently outstanding on * * * [Virginia's] 1980 LeBaron automobile.
That upon the payment of the loan on the LeBaron, the unallocated family support shall decrease to the amount of $140.00 per week, for so long as Grove * * * shall live with * * * [Virginia] * * * .

Subsequent to the issuance of the Judgment, James petitioned the Chautauqua County Family Court (Family Court) to modify the previous support order contained in the Judgment. On December

17, 1985, the Family Court issued an "ORDER MODIFYING ORDER MADE BY ANOTHER COURT (Support)", and an attached "FINDINGS OF FACT".

The findings of fact provided, in pertinent part, that:

     4.   There is one child [Renea] aged 7 for whose support [James] is liable * * * .

               *     *     *     *     *     *     *

     10.   The monthly needs of the child are:  $408.28

The Order directed James to "pay $100 per week for support, effective 12-17-85, and payments are to be made direct to [Virginia]".

On their 1990 Federal income tax return, petitioners deducted $5,200 as "alimony paid".  This sum represented the $100.00 a week James was ordered to pay to Virginia.

Respondent disallowed petitioners' $5,200 alimony deduction. Respondent's position is that based upon the language of the Judgment of Divorce and the subsequent order that modified the Judgment, the payments made constitute nondeductible child support payments.  Respondent further contends that petitioners have only substantiated $1,425 in payments to Virginia.

Petitioners argue that the payments are deductible as alimony.  James testified that it was his understanding at the time of his divorce that his ex-wife "was to pay the tax" on the money he paid to her.  Petitioners further argue that James was divorced on December 11, 1984, and, therefore, the pre-Tax Reform Act of 1984 rules apply.  Petitioners contend that the term

"unallocated family support" found in the Judgment does not fix the payments as child support under the pre-1984 rules.

Petitioners bear the burden to prove that the Commissioner's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace and a taxpayer must be able to show that the deduction sought comes within the express provisions of the statute. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

The deductibility of alimony is governed by sections 71 and 215. The Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 795, applicable to divorce instruments executed after December 31, 1984, revised both sections. The initial issue we must decide is whether James' divorce instrument was executed as of December 11, 1984, or April 1, 1985.

Petitioners rely on the New York case of Jayson v. Jayson, 54 A.D.2d 687, 387 N.Y.S.2d 274 (1976), to support their view that James was divorced as of December 11, 1984, the date of the hearing in open court. In Jayson, the Appellate Division of the New York Supreme Court held that a judgment can be entered nunc pro tunc in a divorce action after the death of one of the parties, if such party was entitled to the divorce while both of the parties were living. Jayson v. Jayson, supra.

In the instant case, James is not seeking to have the Judgment entered nunc pro tunc.  The Judgment specifically states that it is:

> ORDERED, ADJUDGED AND DECREED, that * * * [Virginia] be and hereby is granted Judgment dissolving the marriage relation heretofore existing between the plaintiff, VIRGINIA * * * and the defendant, JAMES * * *.

The oral stipulation of December 11, 1984, was merged into the Judgment, which was signed by the Chautauqua County Supreme Court justice on April 1, 1985, and entered on April 3, 1985.  The payments in question were made pursuant to that Judgment, as modified on December 17, 1985.  Thus, the pertinent divorce instrument in this case was executed after December 31, 1984.  Consequently, sections 71 and 215, as amended by the Tax Reform Act of 1984, govern the payments in issue.

Section 215(a) allows an individual, in computing adjusted gross income, to deduct amounts paid during the year if such amounts are includable in the gross income of the recipient under section 71(a).  Section 71(c)(1) specifically excludes from the recipient's gross income any "part of any payment which the terms of the * * * instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse."  Thus, a sum fixed by the instrument or agreement as payable for child support is not deductible by the payor as alimony.  Sec. 71(c)(1); sec. 1.71-

1T(c), Q&A 15-16, Temporary Income Tax Regs., 49 Fed. Reg. 34456-34457 (Aug. 31, 1984).

Based on the record, we find that James paid $5,200 to Virginia in 1990. However, we conclude that the $5,200 paid to Virginia in 1990 constituted nondeductible child support. The Judgment specifically stated that James' payments were to be $140 a week for so long as Grove, James' son, lived with Virginia. Additionally, the December 17, 1985, modification of the Judgment obtained by James to reduce his support payments to $100 a week was based on the factual findings that there was one child, Renea, for whose support James was liable, and that Renea's monthly support needs equaled $408.28 a month. Consequently, we find that the $100 a week payments were fixed "as a sum which is payable for the support of children of the payor spouse." Sec. 71(c). We note that the result would be the same under the pre-1984 rules. See, e.g., Sullivan v. Commissioner, T.C. Memo. 1995-240.

For these reasons, we sustain respondent's determination that the payments made by James in 1990 constituted nondeductible child support.

Decision will be entered for

respondent.